RECEIPT NUMBER
531831

ORIGINAL

*Judge's Copy*

MAGISTRATE JUDGE CAPEL

39

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

---

TONYA FRANCIS, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

JON S. BILSTROM, CAROL H.
RODRIGUEZ, JESS RHOADS, COMERICA
INCORPORATED, and JOHN DOES 1-30

Defendants.

---

JUDGE : Gadola, Paul V.
DECK : S. Division Civil Deck
DATE : 09/26/2005 @ 16:42:41
CASE NUMBER : 4:05CV40298
CIV FRANCIS V BILSTROM ET AL
(EW)

:
:
:       **CLASS ACTION COMPLAINT**
:
:
:
:
:

*(left margin, vertical)* ADLER & ASSOCIATES, PLLC, 30300 NORTHWESTERN HWY., SUITE 304, FARMINGTON HILLS, MI 48334 (248) 855-5090

Plaintiff Tonya Francis ("Plaintiff"), on behalf of the Comerica Incorporated Preferred

Savings Plan (the "Plan"), and on behalf of a class of similarly situated participants and

beneficiaries of the Plan (the "Participants"), by his attorneys, alleges the following for his

Complaint ("Complaint"):

## I. NATURE OF THE ACTION AND SUMMARY OF CLAIMS

1.      Plaintiff, a participant in the Plan, brings this action against Comerica

Incorporated ("Comerica" or the "Company") and others for Plan-wide relief on behalf of the

Plan, and all Participants in the Plan for whose individual accounts the Plan held an interest in

the Comerica Incorporated Common Stock Fund (the "Company Fund") between July 17, 2002,

and December 30, 2002 (the "Class Period"). Plaintiff brings this action on behalf of the Plan

and its Participants pursuant to § 502(a)(2) and (3) of the Employee Retirement Income Security

Act ("ERISA"), 29 U.S.C. § 1132(a)(2)and (3).

2.     As more fully set forth below, Defendants breached their fiduciary duties owed to the Plan and its Participants, including those fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, and Department of Labor Regulations, 29 C.F.R. § 2550. As a result of these wrongful acts, pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), Defendants are liable to make good to the Plan the losses resulting from each such breach of fiduciary duty. Plaintiff also seeks equitable relief.

3.     During 2002, the Company issued false and misleading financial statements regarding its Second Quarter 2002 results. Those financial statements were false because they failed to disclose and/or misrepresented the following adverse facts, *inter alia*: (I) that the Company's loan review process was inadequate; (ii) that the Company's loan reserves were lower than required by Generally Accepted Accounting Principles because they were based on over-inflated loan ratings; (iii) that the Company lacked adequate internal controls and that it was unable to ascertain the true financial condition of the Company; and, (iv) as a result, the value of the Company's net income and financial results were materially overstated.

4.     In light of the above accounting failures, Comerica stock was artificially inflated and the Company Fund was an imprudent retirement investment. When the Company revealed the nature and extent of the accounting failures the value of Comerica stock fell by over 20%, and the Plan's assets held in Comerica stock depreciated by over $63 million.

5.     Plaintiffs' claims arise from the failure of the Defendants to act solely in the interest of the participants and beneficiaries of the Plan and to exercise the required care, skill, prudence, and diligence in administering the Plan and investing its assets. The Defendants

-2-

violated their fiduciary obligations to the Plan under ERISA §§ 404 and 405, 29 U.S.C. §§ 1104 and 1105 by, among other things:

    (a)    failing to prudently manage the assets of the Plan by allowing Company stock to be an investment option for the Plan and by maintaining investment in shares of Company stock for the Plan under circumstances in which Defendants could not reasonably have believed that continued investment in Company stock was prudent;

    (b)    failing to properly monitor the Plan's fiduciaries to ensure that they were prudently and loyally serving the interests of the Plan's participants and, in connection therewith, failing to remove and replace fiduciaries whom they knew or should have known were acting disloyally and imprudently with respect to the Plan and its assets;

    (c)    failing to provide complete and accurate information to the Plan's participants and beneficiaries and to refrain from providing false information or concealing material information regarding the Plan's investment options such that participants can make informed decisions with regard to investment options available under the Plan; and

    (d)    failing to avoid conflicts of interests and to resolve them promptly when they occur by continuing to allow Company stock as an investment for the Plan during the Class Period, by failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the Plan's investment in Company stock and by failing to notify the Department of Labor about the information which made employer stock an unsuitable investment for the Plan.

6.    Plaintiff alleges that Defendants' breaches of fiduciary duty with respect to the Plan's offering, holding and acquisition of Company stock resulted in losses to the Plan which the Defendants are personally liable to make good to the Plan pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).

7.    Because Plaintiff's claims apply to the Plan's participants and beneficiaries as a whole, and because ERISA authorizes plan participants such as Plaintiff to sue for plan-wide

-3-

relief for breaches of fiduciary duty, Plaintiff bring this action on behalf of himself and all participants and beneficiaries of the Plan during the Class Period.

8.     Because the information and documents on which Plaintiff's claims are based are for the most part solely in Defendants' possession, certain of Plaintiff's allegations are by necessity upon information and belief. At such time as Plaintiff has the opportunity to conduct discovery, Plaintiff will, to the extent necessary and appropriate, seek leave to amend the Complaint to add such other additional facts as are discovered that further support the claims herein.

## II. JURISDICTION AND VENUE

9.     **Subject Matter Jurisdiction.**  This is a civil enforcement action for breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a). This Court has original, exclusive subject matter jurisdiction over this action pursuant to the specific jurisdictional statute for claims of this type, ERISA 502(e)(1), 29 U.S.C. § 1132(e)(1). In addition, this Court has subject matter jurisdiction pursuant 28 U.S.C. § 1331.

10.     **Personal Jurisdiction.**  ERISA provides for nation-wide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All of the Defendants are residents of the United States. Accordingly, this Court has personal jurisdiction over them.

11.     **Venue.**  Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan were administered in this District, some or all of the fiduciary breaches for which relief is sought occurred in this District, and one or more of the Defendants reside or maintain a place of business in this district. Venue is also proper in this District under 28 U.S.C. § 1391(b) & (c) because some of the Defendants, including the Company itself, reside,

-4-

have principal executive offices, and/or systematically and continuously do business in this District.

## III. THE PARTIES

**Plaintiff**

12.     Plaintiff Tonya Francis is a resident of the State of Michigan, Wayne County, and is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). The Plan held units of Company stock in Plaintiff's individual account.

**Defendants**

13.     Jon S. Bilstrom ("Bilstrom"), Plan Administrator, Executive Vice President — Governance, Regulatory Relations and Legal Affairs, signatory to the Plan's 2004 Form 11-K.

14.     Carol H. Rodriguez ("Rodriguez"), Plan Administrator, Vice President, Senior Counsel, Corporate Counsel and Assistant Secretary, signatory to the Plan's 2003 Form 11-K and 2002 Form 11-K.

15.     Jess Rhoads ("Rhoads"), Plan Administrator, signatory of the Plan's 2003 Form 5500 and 2001 Form 5500.

16.     Comerica Incorporated ("Comerica" or the "Company"), is a Delaware corporation with its principal place of business located at Comerica Tower at One Detroit Center, 500 Woodward Avenue, Detroit, MI 48226. The Company is a multi-state financial services company with three major lines of business: the Business bank, the Individual Bank and the Investment Bank. Comerica is the Plan's sponsor, and the Plan's Administrator according to the Plan's 2001 Form 5500 and 2003 Form 5500.

17.     Defendant John Does 1-30 are fiduciaries of the Plan and/or exercised discretionary authority over the Plan and/or the Company Fund.  After Plaintiff has had a reasonable opportunity to conduct discovery and at such time as the identities of the John Doe Defendants are revealed, Plaintiff may seek leave to amend.

## IV. THE PLAN

18.     The Comerica Incorporated Preferred Savings Plan (the "Plan") is an employee benefit Plan within the meaning of ERISA § 3(3) and 3(2)(A), 29 U.S.C. § 1002(3) and 1002(2)(A).  The Plan covers all eligible employees of Comerica and certain subsidiaries.

19.     The Plan is a "defined contribution" or "individual account" Plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each Participant and for benefits based solely upon the amount contributed to those accounts, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participant's account.  Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

20.     Participants make annual contributions to the Plan on a pre-tax basis ("Voluntary Contributions"), not to exceed the lesser of 50% of the participant's annual compensation or the IRS allowed maximum (depending on the year).

21.     The Company will match a percentage of the first $3,000 of the Participant's Voluntary Contribution, as defined by the Plan ("Matching Contributions").  Matching Contributions are invested in the Corporations common stock.

-6-

22.     In 1999, the Plan was amended to add an Employee Stock Ownership Plan ("ESOP") provision to the Plan.  Voluntary and Matching Contributions in the Corporation's common stock are held in an ESOP account.[1]

23.     Prior to the 2002 plan year, all Voluntary and Matching Contributions were made in Comerica common stock and permanently held in a restricted Comerica common stock account. At the beginning of plan year 2002, the Plan was changed to provide that these Voluntary and Matching Contributions are to be held in a restricted Comerica Incorporated common stock account until the end of the calendar year, when the assets held in such account become vested and unrestricted and, therefore, eligible to be reallocated to other fund options.[2]

24.     For the year ended 2002, the Plan held total assets of $507 million.  Of that amount, $194 million (nearly 40%) was held in Comerica common stock.  Investment in Comerica common stock represents the Plan's single largest investment.

25.     During 2002, the Plan's investment in Comerica common stock *depreciated* by over $63 million.

## V.  DEFENDANTS ARE FIDUCIARIES OF THE PLANS

26.     At all times relevant to this Complaint, Defendants were fiduciaries of the Plan because:

---

[1]

Dividends earned on Comerica stock held in the ESOP can either be reinvested within the Plan or distributed to participants as cash with their regular pay.

[2]

Prior to January 1, 2004, the Plan year ended on December 30. Effective January 1, 2004, the Plan year changed to a calendar year ending December 31. Transactions occurring on December 31, 2003, were included in the Plan period ended December 31, 2004.

ADLER & ASSOCIATES, PLLC, 30300 NORTHWESTERN HWY., SUITE 304, FARMINGTON HILLS, MI 48334  (248) 855-5090

(a)  they were so named; and/or

(b)  they exercised authority or control respecting management or disposition of the Plan's assets; and/or

(c)  they exercised discretionary authority or discretionary control respecting management the Plans; and/or

(d)  they had discretionary authority or discretionary responsibility in the administration of the Plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  In that regard, a person is a fiduciary even if a plan does not name him as such or by its terms assign fiduciary duties to him where by his conduct he engages in fiduciary activities.  The test for whether a person (or entity) is a fiduciary is functional and based on actual conduct.  Those who have control over management of a plan or plan assets are fiduciaries regardless of the labels or duties assigned to them by the language of a plan.  Moreover, in order to fulfill the express remedial purpose of ERISA, the definition of "fiduciary" is to be construed broadly.

27.  A fiduciary may not avoid his fiduciary responsibilities under ERISA by relying solely on the language of the plan documents.  While the basic structure of a plan may be specified within limits by the plan sponsor, the fiduciary may not follow the plan document if to do so leads to an imprudent result under ERISA § 404(a)(1)(d), 29 U.S.C. § 1104(a)(1)(D).

28.  Defendant Bilstrom is the Plan Administrator and signatory as such to the Plan's 2004 Form 11-K.

29.  Defendant Rodriguez is the Plan Administrator and signatory as such to the Plan's 2003 Form 11-K and 2002 Form 11-K.

-8-

30.     Defendant Rhoads is the Plan Administrator and signatory as such to the Plan's 2001 Form 5500 and 2003 Form 5500.

31.     Defendant Comerica is the Plan's sponsor, and the Plan's Administrator according to the Plan's 2001 Form 5500 and 2003 Form 5500.

32.     On information and belief, John Does 1-30 are additional persons or entities who had fiduciary authority for the Plan either as named fiduciaries or because they were *de facto* fiduciaries under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

## VI.  FIDUCIARY DUTIES UNDER ERISA

33.     **The Statutory Requirements.**  ERISA imposes strict fiduciary duties upon plan fiduciaries. ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefit to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

34.     **The Duty of Loyalty.**  ERISA imposes on a plan fiduciary the duty of loyalty--that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ."

35.     The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye single" to the

-9-

interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

36. **The Duty of Prudence.** Section 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence--that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . ."

37. **The Duty to Inform.** The duties of loyalty and prudence include the duty to disclose and inform. These duties entail: 1) a negative duty not to misinform; 2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and, 3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries. These duties to disclose and inform recognize the disparity that may exist, and in this case did exist, between the training and knowledge of the fiduciaries, on the one hand, and the Participants, on the other.

38. Pursuant to the duty to inform, fiduciaries of the Plan were required under ERISA to furnish certain information to Participants. For example, ERISA § 101, 29 U.S.C. § 1021, requires that fiduciaries furnish a Summary Plan Description ("SPD") to Participants. ERISA § 102, 29 U.S.C. § 1022, provides that the SPD must apprise Participants of their rights under the Plan. The SPD and all information contained or incorporated therein constitutes a representation in a fiduciary capacity upon which Participants are entitled to rely in determining the identity and

ADLER & ASSOCIATES, PLLC, 30300 NORTHWESTERN HWY., SUITE 304, FARMINGTON HILLS, MI 48334 (248) 855 5090

responsibilities of fiduciaries under the Plan and in making decisions concerning their benefits and

investment and management of assets allocated to their accounts:

> The format of the summary plan description must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries. Any description of exceptions, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant. Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations. The description or summary of restrictive plan provisions need not be disclosed in the summary plan description in close conjunction with the description or summary of benefits, provided that adjacent to the benefit description the page on which the restrictions are described is noted.

29 C.F.R. § 2520.102-2(b).

39.    **The Duty to Investigate and Monitor Investment Alternatives.**  With respect to a pension plan such as the Plan, the duties of loyalty and prudence also entail a duty to conduct an independent investigation into, and continually to monitor, the merits of the investment alternatives in the Plan, including employer securities, to ensure that each investment is a suitable option for the Plan.

40.    **The Duty to Monitor Appointed Fiduciaries.**   Fiduciaries who have the responsibility for appointing other fiduciaries have the further duty to monitor the fiduciaries thus appointed. The duty to monitor entails both giving information to and reviewing the actions of the appointed fiduciaries. In a 401(k) plan such as the Plan, the monitoring fiduciaries must therefore ensure that the appointed fiduciaries:

    a.    possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties;

-11-

b.  are knowledgeable about the operations of the Plan, the goals of the Plan, and the behavior of Plan's participants;

c.  are provided with adequate financial resources to do their jobs;

d.  have adequate information to do their jobs of overseeing the Plan investments with respect to company stock;

e.  have access to outside, impartial advisors when needed;

f.  maintain adequate records of the information on which they base their decisions and analysis with respect to Plan investment options; and,

g.  report regularly to the monitoring fiduciaries.

The monitoring fiduciaries must then review, understand, and approve the conduct of the hands-on fiduciaries.

41.  **The Duty Sometimes to Disregard Plan Documents**.  A fiduciary may not avoid his fiduciary responsibilities by relying solely on the language of the plan documents.  While the basic structure of a plan may be specified, within limits, by the plan sponsor, the fiduciary may not blindly follow the plan document if to do so leads to an imprudent result.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

42.  **Co-Fiduciary Liability**.  A fiduciary is liable not only for fiduciary breaches within the sphere of his own responsibility, but also as a co-fiduciary in certain circumstances. ERISA § 405(a), 29 U.S.C. § 1105(a), states, in relevant part, that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1)  if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2)  if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

ADLER & ASSOCIATES, PLLC, 30300 NORTHWESTERN HWY., SUITE 304, FARMINGTON HILLS, MI 48334   (248) 855-5090

-12-

(3)   if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

43.   **Non-Fiduciary Liability**.   Under ERISA non-fiduciaries who knowingly participate in a fiduciary breach may themselves be liable for certain relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## VII.  PARTICIPANTS ARE NOT RESPONSIBLE FOR IMPRUDENT PLAN INVESTMENTS

44.   The fact that Participants selected investments from options pre-selected by Defendants is no defense in this case.  Fiduciaries can shift liability for imprudent investments to Participants under ERISA § 404(c), 29 U.S.C. § 1104(c) only if, among other things, they satisfy *all* of the over 20 requirements spelled out in the DOL regulations issued pursuant to §404(c) at 29 C.F.R. §2550.404c-1, including, *inter alia*, that they:

a)   disclose in advance the intent to shift liability to Participants;

b)   designate the Plan as "404(c) plans" and adequately communicate this to Participants;

c)   ensure that Participants are not subject to undue influence;

d)   provide an adequate description of the investment objectives and risk and return characteristics of each investment option; and

e)   disclose to Participants all material information necessary for Participants to make investment decisions that they are not precluded from disclosing under other applicable law.  In this regard, fiduciaries have a choice B they can disclose all material information to Participants, including information that they are not required to disclose under the securities laws, and shift liability to Participants, or they can comply with the more limited disclosure requirement under the securities laws but remain liable for imprudent investments.

29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(i) and (ii) and (c)(2)(i) and (ii).

ADLER & ASSOCIATES, PLLC.   30300 NORTHWESTERN HWY.,   SUITE 304,   FARMINGTON HILLS, MI 48334   (248) 855 5090

45.     Defendants failed to shift liability to Participants for imprudent investment decisions under section 404(c) because they failed to comply with the relevant regulations.

46.     Moreover, as alleged herein, Defendants failed to provide participants with complete and accurate information regarding Comerica Stock in the Plan and the financial condition of the Company.  The DOL's §404(c) regulations note, significantly, that participants do not exercise control over their investment decisions sufficient to justify application of a §404(c) defense where a "plan fiduciary has concealed material non-public facts regarding the investment from the participant." Accordingly, participants failed to exercise the independent control over their investment in Comerica Stock in the Plan that is necessary for the §404(c) defense to apply.

47.     In addition, §404(c) does not apply to any portion of the Plan deemed an ESOP in that the Secretary of Labor has interpreted the provision to apply only to Plan that provide plan participants with a full range of investment options, which an ESOP by its very nature does not. 29 C.F.R. §2550.404c-1.   Nor can §404(c) apply to any losses that result from the Company's Matching Contributions, as participants did not exercise control over those investments.

## VIII. SUBSTANTIVE ALLEGATIONS

48.     Comerica is a financial services company, with 11,000 employees and among the country's twenty-five largest banking companies.

49.     In early 2001, Comerica merged with Imperial Bankcorp ("Imperial"), a California bank.  For much of the relevant period discussed herein, the loan review process implemented by Comerica in California was insufficient to ensure the adequate ratings of loans in the Company's California portfolio.

-14-

50.     This improper loan review process and failure to maintain adequate loan-loss reserves had a material adverse effect on Comerica's operating results.  By failing to report the true facts concerning its loan portfolio, the Company's financial statements during much of the relevant period were false and misleading, thereby artificially inflating its stock price.   This failure ultimately resulted in the Company's belated admission that for much of the relevant period its financial statements were materially overstated.

51.     The Class Period begins on July 17, 2002, when Comerica issued a press release announcing its financial results for the Second Quarter ending June 30, 2002.    In that announcement, the Company reported earnings of $184 million.

52.     On October 2, 2002, before the market opened for trading, Comerica revealed that it would record a $328 million charge ($213 million after-tax) related to an "incremental provision for credit losses" and goodwill impairment related to the Company's Munder Capital Management subsidiary.  The incremental provision for credit losses totaled $247 million, of which $40 million was related to the Company's 2002 second quarter.  As a result, the Company disclosed that it would have to restate its second quarter earnings by $23 million, reducing it from the previously announced $184 million to a restated $161 million.

53.     News of the announcement shocked the market.  On October 2, 2002, the price of Comerica shares fell $10.19 per share, or over 20%, to close at $40.00 per share.  This represented a 52-week low in the price of Comerica stock.  That same day, Standard & Poor's Ratings Services announced that it had downgraded its outlook on Comerica from stable to negative.

54.     By October 7 (the following Monday), the price of Comerica stock had fallen to $35.54 per share.

55.    In the weeks that followed the Company's revelations, a Company conference call and media articles shed further light on the Company's inadequate loan-loss reserves. The reason for the inadequacy had to do with faulty underwriting procedures and internal controls. Media reports expressed concern that Comerica increased its loan-loss reserves only after regulators instructed it to do so.

56.    On December 10, 2002, Comerica replaced its credit officer for the prior 15 years, Thomas R. Johnson, with Dale E. Greene. The Company also increased the amount of senior staff supporting its credit process and announced that it would be improving the documentation technology tools used in the credit process.

57.    On December 27, 2002, Comerica filed a restated Form 10-Q for the second quarter of 2002, restating its earnings to reflect the additional provision for credit losses. The revised 10-Q stated that many loans in the Company's California portfolio had been assigned a risk level that was inappropriately low. As a result, the Company explained the need for reclassifying these loans into higher-risk categories. The revised filing stated:

> The reclassification of approximately 50 loans in the second quarter reflects the further review and adjustment of the credit risk associated with the Corporation's California portfolio with the Corporation implemented following the input it received in the course of the above-references regulatory examination. Similarly, the increase in the unallocated reserve reflects an additional weighting of risk based on the general characteristics of the California loan portfolio which stems in large part from the general migration of loans to higher risk categories and the corresponding impact on the assessment of the overall character of the portfolio.

58.    The revised December 27, 2002, filing also stated that the Company absorbed a $25 million "merger-related charge to confirm the credit policies of Imperial with Comerica."

-16-

59.     As a result of the foregoing, the Company's second quarter 2002 financial statements were material false and misleading because they failed to disclose and/or misrepresented the following adverse facts, among others: (i) that the Company's loan review process was inadequate; (ii) that the Company's loan reserves were lower than required by Generally Accepted Accounting Principles because they were based on over-inflated loan ratings; (iii) that the Company lacked adequate internal controls and that it was unable to ascertain the true financial condition of the Company; and, (iv) as a result, the value of the Company's net income and financial results were materially overstated at certain times and that its net income was overstated by approximately $23 million in the Second Quarter of 2002.

60.     In light of the above accounting failures, Comerica stock was artificially inflated and the Company Fund was an imprudent retirement investment. Defendants breached their ERISA duties by not, *inter alia*, acting to remove it as an investment option, beginning on July 17, 2002, when the Company and Defendants knew that Comerica stock was artificially inflated and an imprudent investment.

## IX. DEFENDANTS KNEW OR SHOULD HAVE KNOWN THAT COMERICA STOCK WAS NOT A PRUDENT INVESTMENT FOR THE PLAN

61.     During the Class Period, Defendants had or should have had firsthand knowledge of the above-described accounting irregularities by virtue of their positions at Comerica.

62.     Defendants failed to properly consider the practices described above when evaluating the prudence of Company stock as an investment option for the Plan.

63.     Defendants had or should have had intimate knowledge of both the Company's improper accounting practices during the Class Period as well as the Plan's heavy investment in

Company stock. Despite this knowledge, and in breach of their fiduciary duties to monitor the fiduciaries' actions to ensure that they have all the information needed to best provide a prudent portfolio of investment alternatives for the Plan, the Company and the other fiduciaries remained silent.

64. Defendants failed to conduct an appropriate investigation into whether the Company stock was a prudent investment for the Plan. Additionally, Defendants failed to provide the Plan's Participants with material information regarding investment in Company stock, including Company accounting irregularities.

65. An adequate investigation by the Defendants would have revealed to a reasonable fiduciary that investment by the Plan in Company stock was imprudent. A prudent fiduciary acting under similar circumstances would have acted to protect participants against unnecessary losses, and would have made ameliorating investment decisions, such as altering the mix of the Company Fund away from Comerica stock in favor of cash.

66. Defendants' various failures to act, investigate or properly inform the Plan's Participants was aggravated by the fact that a significant size of the Plan's assets was invested in Company stock, much of which was non-participant directed, meaning that the Plan's Participants were powerless to transfer out of or sell their holdings of Company stock.

67. Maintaining such a large concentrated investment in a single security effectively precluded the Plan's fiduciaries from liquidating the imprudent holding in a timely fashion without causing a further collapse in its price. To prevent such a collapse, the imprudent concentrated holding of Company stock would have had to be sold over an extended period of time. None of

the risks associated with the Plan's high concentration of Company stock were disclosed to the Plan's Participants.

68.     Therefore, because Defendants knew or should have known that the Company was not a prudent investment option for the Plan during the Class Period, they had an affirmative fiduciary obligation under ERISA to protect the Plan and its Participants from significant and entirely predictable losses incurred as a result of the Plan's investment in Company stock.

69.     Defendants failed to protect the Plan and its Participants from obvious risk of significant losses as a result of the Plan's large Company stock holdings.

## X.  COMERICA AND THE OTHER FIDUCIARIES SUFFERED FROM CONFLICTS OF INTEREST

70.     Comerica, as the single largest asset issuer of the Plan, suffered from an obvious conflict of interest.  It had an interest in maintaining the highest possible value and demand for its stock while at the same time serving the interests of the Plan and its Participants to invest in only prudent assets.

71.     As officers of Comerica, the individual Defendants' compensation was tied largely to the Company's performance.  In addition to a base salary, executives were eligible for annual incentive awards, dependant upon the Company's reported performance.

72.     Because of the Company's incentives to keep its prospects and stock price high and the fact that the individual Defendants' compensation was so closely tied to the price of the Company's stock, Defendants had a very strong incentive to have the Plan continually investing, each month, in Company stock.

73.    Elimination of the Company stock as an investment option for the Plan would have: (i) potentially reduced demand for Company stock in the open market; and, (ii) sent a negative signal to stock analysts and large institutional investors concerning the true underlying value of the Company's stock, both of which would have negatively affected the price of the Company's stock, resulting in lower compensation for the Defendants.

74.    These conflicts of interest put the Defendants in the position of having to choose between their own interests as employer, executives and stockholders, and the interests of the Plans' Participants, which ERISA dictates they were obligated to prudently and loyally serve with an "eye single."

## XI.  CLASS ACTION ALLEGATIONS

75.    Plaintiff bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure in their representative capacity on behalf of themselves and a class (the "Class") of all persons similarly situated, defined as follows:

> All persons who were participants in or beneficiaries of the Comerica Incorporated Preferred Savings Plan at any time from July 17, 2002 and December 30, 2002 (the "Class Period").

76.    Plaintiff meet the prerequisites of Rule 23(a) to bring this action on behalf of the Class because:

    a.    **Numerosity.** The Class consists of thousands of individuals and is so numerous that joinder of all members as individual plaintiffs is impracticable.

    b.    **Commonality.** There are questions of law and fact common to the Class. Such common questions include, but are not limited to:

        i.    Whether Defendants are fiduciaries;

        ii.    Whether Defendants breached their fiduciary obligations to the participants and beneficiaries of the Plan by failing to prudently

-20-

ADLER & ASSOCIATES, PLLC; 30300 NORTHWESTERN HWY., SUITE 304, FARMINGTON HILLS, MI 48334  (248) 855-5090

manage the assets of the Plan by continuing to hold substantially all of the assets of the Plan in shares of Company stock under circumstances in which Defendants could not have reasonably believed that such was in keeping with how a prudent trustee would operate;

iii.      Whether Defendants breached their fiduciary obligations to the participants and beneficiaries of the Plan by causing the Plan to make and maintain investments in Company stock, when it was not prudent to do so;

iv.      Whether Defendants breached their fiduciary obligations to the participants and beneficiaries of the Plan under ERISA by providing incomplete and inaccurate information to participants regarding Company stock;

v.      Whether Defendants breached their fiduciary obligations to the participants and beneficiaries of the Plan by failing to prudently monitor so that the Plans' and participant's interests were adequately protected and served;

vi.      Whether Defendants breached their fiduciary obligations to the participants and beneficiaries of to provide complete and accurate information concerning the Company's financial well-being and the risk of Company stock as a retirement investment;

vii.      Whether Defendants breached their duty to avoid conflicts of interest and to promptly resolve them when they occurred by continuing to allow Company stock as an investment for the Plan and by failing to engaged independent fiduciaries and/or advisors who could make independent judgments concerning the prudence of the Plans' investments;

viii.      Whether Defendants, by failing to comply with their specific fiduciary responsibilities under ERISA § 404(a), 29 U.S.C. § 1104(a)(1), enabled co-fiduciaries to commit violations of reasonable efforts to remedy the breaches; and,

ix.      Whether, as a result of fiduciary breaches engaged in by the Defendants, the Plan and its participants and beneficiaries suffered losses.

c.   **Typicality.** Plaintiff's claims are typical of the claims of the Class.

d.   **Adequacy.** Plaintiff is a participant in the Plan and is authorized under ERISA to bring this action on behalf of the Plan and its Participants. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiff has engaged competent counsel experienced in class actions and complex litigation.

77.   This action is properly maintainable as a class action for the following independent reasons and under the following portions of Rule 23:

a.   Given ERISA's imposition of a uniform standard of conduct on ERISA fiduciaries, the prosecution of separate actions by individual members of the Class would create the risk of inconsistent adjudications which would establish incompatible standards of conduct for the Defendants with respect to their obligations under the Plan. Fed. R. Civ. P. 23(b)(1)(A).

b.   The prosecution of separate actions by members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B).

c.   The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole. Fed. R. Civ. P. 23(b)(2).

d.   Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

78.   There are one or more putative or certified securities class action cases pending against the Company and certain other Defendants. *See In re Comerica, Inc. Securities Litigation*, No. 5:02-CV-60233 (MOB) (E.D. Mich); *In re Comerica, Inc./Imperial Bancorp Securities Litigation*, No. 2:02-CV-60211 (MOB) (E.D. Mich). The claims asserted herein are brought under

-22-

ERISA and related principles of federal common law and are not being asserted by the plaintiffs in the securities class actions. Indeed, Plaintiff's claims herein cannot be pursued in the securities actions, as the shares of the Company stock in the Plan were not open market purchases. Accordingly, the named plaintiffs in those class actions do not adequately represent the Plaintiff, the Plan or the Class herein with respect to ERISA claims and those plaintiffs do not purport to represent the Class described herein. Moreover, the named plaintiffs in the securities actions may be subject to defenses, stays of discovery, heightened pleading requirements, and limitations of liability under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1(b), and other statutes and rules that do not apply to the claims asserted herein. Furthermore, the shareholder plaintiffs in the securities actions lack standing under ERISA § 502(a), 29 U.S.C. § 1132(a), to bring an action on behalf of the Participants of the Plan for allegations of fiduciary breaches.

## BREACHES OF FIDUCIARY DUTY

### COUNT I

**Failure to Prudently Manage the Plans' Assets**
**(Breaches of fiduciary duties in violation of ERISA §§ 404 and 405,**
**29 U.S.C. §§ 1104 and 1105, against all Defendants)**

79.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

80.    At all relevant times, as alleged above, Defendants acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), by exercising authority and control with respect to the management of the Plan and the Plans' assets.

81.    ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan. ERISA states, in relevant part:

-23-

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(A)    for the exclusive purpose of

      (i)    providing benefits to participants and their beneficiaries; and

      (ii)    defraying reasonable expenses of administering the plan;

(B)    with the care, skill, prudence, and diligence under circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;

(C)    by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D)    in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

ERISA § 404(a), 29 U.S.C. § 1104(a).

82.    ERISA also imposes explicit co-fiduciary liability on plan fiduciaries.  ERISA states, in relevant part:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

(2)    if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which gave rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)    if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

-24-

ERISA § 405, 29 U.S.C. 1105.

83.     Under ERISA, fiduciaries who exercise discretionary authority or control over management of the plan or disposition of plan assets are responsible for ensuring that investment options make available to participants under a plan are prudent. Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested. The Defendants were responsible for ensuring that all investments in Company stock in the Plan were prudent, are liable for losses incurred as a result of such investments if they were imprudent.

84.     A fiduciaries duty of loyalty and prudence require it to disregard plan documents or directives that it knows harm plan participants or beneficiaries. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). Thus a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor allow others, including those whom they direct or who are directed by the plan, including plan trustees, to do so.

85.     The Defendants breached their duties to prudently and loyally manage the Plan assets. During the Class Period Defendants knew or should have known that the Company stock was not a suitable and appropriate investment for the Plan in light of the Company's inappropriate accounting. Nonetheless, during the Class Period, these fiduciaries continued to offer the Company's stock as an investment option, instead of other investments. Moreover, during the Class Period, despite their knowledge of the imprudence of the investment, the Defendants failed to take adequate steps to prevent the Plan, and indirectly the Plans' Participants, from suffering losses as a result of the Plans' investment in Company stock.

86.     In addition, Defendants breached their co-fiduciary obligations by, among other failures, knowingly participating in, or knowingly undertaking to conceal the failure to prudently and

ADLER & ASSOCIATES, P.L.L.C.   30300 NORTHWESTERN HWY., SUITE 304, FARMINGTON HILLS, MI 48334   (248) 855-5090

loyally manage the Plans' assets in exercising their discretion with respect to offering Company stock as an investment option in the Plan, despite knowing that such failure was a breach; enabling the Company and the Defendants to fail to prudently manage the Plans' assets in exercising direction with respect to the Plans' investments, and by having knowledge of the Company's and the Defendants' failure to prudently manage the Plans' assets, yet not making any effort to remedy the breach.

87.     Defendants named in this Count were unjustly enriched by the fiduciary breaches described in this Count.

88.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, Plaintiff and the Plan's Participants, lost a significant portion of their retirement investment.

89.     Pursuant to ERISA § 502(a)(2) & (3), 29 U.S.C. 1132(a)(2) & (3), and ERISA § 409(a), 29 U.S.C. 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT II

### Failure to Appropriately Monitor Bilstrom, Rodriguez and Rhoads, and Provide them with Accurate Information
### (Breaches of fiduciary duties in violation of ERISA §§ 404 and 405, 29 U.S.C. §§ 1104 and 1105, against Comerica)

90.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

91.     At all relevant times, Defendants acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. 1002(21)(A), with respect to the Plan because:

      a.     The Company, as a Fiduciary, with duties to oversee the Plan Administrator's activities with respect to administering the Plan, appointed and/or was

-26-

charged with appointing and monitoring Bilstrom, Rodriguez and Rhoads (the "Monitored Fiduciaries"), and, when necessary, removing them;

92. The duty to monitor entails both giving information to and reviewing the actions of the Monitored Fiduciaries. Comerica, as the monitoring fiduciary, must therefore:

    a. Ensure that the Monitored Fiduciaries possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties. They must be knowledgeable about the operations of the Plan, the goals of the Plan, and the behavior of the Plan's participants;

    b. Ensure that the Monitored Fiduciaries are provided with adequate financial resources to do their jobs;

    c. Ensure that the Monitored Fiduciaries have adequate information to do their job of overseeing the Plans' investments, especially with respect to the largest single asset in the Plans: Company stock;

    d. Ensure that the Monitored Fiduciaries maintain adequate records of the information on which they base their decisions and analysis with respect to the Plan's investment options; and,

    e. Ensure that the Monitored Fiduciaries report regularly to the monitoring fiduciaries.

93. The monitoring fiduciary must then review, understand and approve the conduct of the hands-on fiduciaries.

94. Comerica had specific monitoring duties, which included, but were not limited to the following:

    a. It was responsible for appropriately monitoring other fiduciaries of the Plan which it appointed, as well as its other officers and employees who performed their fiduciary function for the Plan in the course and scope of their employment;

    b. It was obligated to act with an appropriate prudence and reasonableness in overseeing the Monitored Fiduciaries' management of the Plan's assets; and,

    c. It was responsible for ensuring that the Monitored Fiduciaries prudently and loyally served the interests of participants, and otherwise satisfied their fiduciary obligations.

95. Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets,

-27-

ADLER & ASSOCIATES, PLLC, 30300 NORTHWESTERN HWY., SUITE 304, FARMINGTON HILLS, MI 48334 (248) 855-5090

and must take prompt and effective action to protect the plan and participants when they are not. In addition, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets.

96.     Comerica breached its fiduciary monitoring duties by:

    a.    Failing to adequately monitor the Monitored Fiduciaries investment of the Plan's assets, specifically the Plan's investment in Company stock, and maintain the assets in Company stock, as opposed to cash or a prudent retirement investment;

    b.    Failing to disclose to the Monitored Fiduciaries information concerning the financial condition and accounting practices of the Company that it knew or should have known was material to loyal and prudent investment decisions concerning the Plan's acquisition and retention of Company stock, and with respect to the implementation of the terms of the Plan;

    c.    Failing to remove fiduciaries whom it knew or should have known were either: (i) not qualified to loyally and prudently manage the Plan's assets; or (ii) suffered under conflicts of interest because their compensation was tied to the price of Company stock;

    d.    Failing to adequately monitor the activities of Bilstrom, Rodriguez and Rhoads in performing their duties ensuring that they disclosed to others complete and accurate information regarding the Company stock;

    e.    Enabling the Monitored Fiduciaries to breach their duties particularly with respect to the investment of the Plan's assets in Company stock, and the disclosure of complete and accurate information regarding Company stock;

    f.    Making no effort to remedy the fiduciary breaches of the Monitored Fiduciaries when it knew or should have had knowledge of said breaches.

97.     Comerica knew or should have known that the fiduciaries it was responsible for monitoring were imprudently allowing the Plan to continue offering the Company's shares as an investment for the Plan, and continuing to invest the assets of the Plan in Company stock, when it was no longer prudent to do so, yet failed to take action to protect the participants from the consequences of the Monitored Fiduciaries' failures.

ADLER & ASSOCIATES, PLLC. 30300 NORTHWESTERN HWY., SUITE 304, FARMINGTON HILLS, MI 48334 (248) 855-5090

98.     In addition, as a result of its inappropriate practices and implicit knowledge thereof, Comerica, in connection with their monitoring and oversight duties, was required to disclose to the Monitored Fiduciaries accurate information about the financial condition and practice of the Company that they knew or should have known that the Monitored Fiduciaries needed to make sufficiently informed decisions.  By remaining silent and continuing to conceal such information from the other fiduciaries, Comerica breached its monitoring duties under the Plan and ERISA.

99.     Comerica is liable as a co-fiduciary because it knowingly participated in the fiduciary breaches by the Monitored Fiduciaries; by enabling the breaches by Bilstrom, Rodriguez and Rhoads; and by having knowledge of the Monitored Fiduciaries' breaches, yet not making effort to remedy the breaches.

100.    Comerica was unjustly enriched by the fiduciary breaches described in this Count.

101.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, Plaintiffs and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investment.

102.    Pursuant to ERISA § 502(a)(2) & (3), 29 U.S.C. 1132(a)(2) & (3), and ERISA § 409(a), 29 U.S.C. 1109(a), Comerica is liable to restore the losses to the Plan caused by its breaches of fiduciary duties alleged in this Count.

## COUNT III

**Failure to Provide Complete and Accurate Information to the Plan's
Participants and Beneficiaries
(Breaches of fiduciary duties in violation of ERISA §§ 404 and 405,
29 U.S.C. §§ 1104 and 1105, against all Defendants)**

-29-

103.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

104.     At all relevant times, Defendants acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C.   1002(21)(A), by exercising authority and control with respect to the management of the Plan and the Plan's assets.

105.     The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, not to mislead them regarding the plan or plan assets, and to disclose information that participants need in order to exercise their rights and interests under the plan.

106.     This duty to inform participants includes an obligation to provide participants and beneficiaries of the Plan with complete and accurate information, and to refrain from providing false information or concealing material information regarding the Plan's investment options available under the Plan. This duty applies to all of the Plan's investment options, including investments in Company stock.

107.     The duty to inform is particularly important where investment in plan assets such as the one here was not diversified and overwhelmingly invested in Company stock. Such investments carry with them an inherently high degree of risk. This inherent risk make these Defendants' duty to provide complete and accurate information especially important.

108.     The Defendants breached their duty to inform participants by failing to provide complete and accurate information regarding Company stock, the Company's accounting improprieties, and the consequent artificial inflation of the value of the stock and, generally, by conveying inaccurate information regarding the soundness of Company stock and the prudence of investing retirement contributions in the stock. This failure was particularly devastating to the Plan

and its Participants since a substantial portion of the Plan's assets were invested in Company stock. Thus, losses in the Company's stock price had an enormous impact on Participants' retirement assets.

109. Defendants are liable as co-fiduciaries because they knowingly participated in and knowingly undertook to conceal the failure of the other fiduciaries to provide complete and accurate information regarding Company stock, despite knowing of their breaches; by enabling such conduct as a result of their own failures to satisfy their fiduciary duties; and by having knowledge of the other fiduciaries' failures to satisfy their duty to provide only complete and accurate information to participants, yet not making any effort to remedy the breaches.

110. These actions and failures to act were uniform and caused the participants and beneficiaries of the Plan to continue to make and to maintain substantial investments in Company stock in the Plan at a time when these Defendants knew or should have known that the participants and beneficiaries did not have complete and accurate information concerning in their investments. Plaintiff and the Class relied to their detriment on these Defendants' incomplete and inaccurate statements regarding Company stock.

111. Defendants named in this Count were unjustly enriched by the fiduciary breaches described in this Count.

112. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investment.

113. Pursuant to ERISA § 502(a)(2) & (3), 29 U.S.C. 1132(a)(2) & (3), and ERISA § 409(a), 29 U.S.C. 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT IV

### Breach of Duty to Avoid Conflicts of Interest
### (Breaches of fiduciary duties in violation of ERISA §§ 404 and 405, 29 U.S.C. §§ 1104 and 1105, against all Defendants)

114.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

115.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on a plan fiduciary a duty to loyalty – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and its beneficiaries.

116.    The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when the occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

117.    Defendants breached their duty to avoid conflicts of interest and to promptly resolve them when the occurred by continuing to allow Company stock as an investment for the Plan during the Class Period, by failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the Plan's investment in Company stock and the information provided to participants and beneficiaries concerning it. Defendants exacerbated this breach by generally failing to take any steps to ensure that the Plan's fiduciaries did not suffer from a conflict of interest.

118.    Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by:

-32-

a.   failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the Plan's investment in Company stock;

b.   failing to notify appropriate federal agencies, including the Department of Labor, of the facts and transactions which made the Company stock an unsuitable investment for the Plans;

c.   failing to take such other steps as were necessary to ensure that Participants' interests were loyally and prudently served;

d.   with respect to each of these above failures, doing so in order to prevent drawing attention to the Company's inappropriate practices; and,

e.   by otherwise placing the interests of the Company and themselves above the interests of the participants with respect to the Plan's investment in Company stock.

119.   Defendants were unjustly enriched by the fiduciary breaches described in this Count.

120.   As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investment.

121.   Pursuant to ERISA § 502(a)(2) & (3), 29 U.S.C. 1132(a)(2) & (3), and ERISA § 409(a), 29 U.S.C. 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

### DEFENDANTS' CAUSATION

122.   The Plan suffered a loss, and the Plaintiffs and the other Class members were damaged, because substantial assets in the Plan were invested in the Company stock during the Class Period in violation of the Defendants' fiduciary duties.   As fiduciaries, the Defendants were responsible for the prudence of investments in the Plan during the Class Period unless participants in the Plan themselves exercised effective and informed control over the assets in the Plan in their individual accounts pursuant to ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated under it.   Those provisions were not complied with here; instead of taking the necessary

steps to ensure effective participant control by complete and accurate disclosure and regulatory compliance, the Defendants did exactly the opposite. As a consequence, participants in the Plan did not control the Plan's assets that were invested in Company stock, and the Defendants remained entirely responsible for ensuring that such investments were and remained prudent. The Defendants' liability to Plaintiffs for damages stemming from imprudent investments of the Plan's assets in Company stock is therefore established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period, without regard to whether or not the participants relied upon statements, acts, or omissions of Defendants.

123. Had the Defendants properly discharged their fiduciary and/or co-fiduciary duties by divesting the Plan of some or all of its imprudent holdings of Company stock and investing the assets in other investments as the Plan administrators should have determined was in the best interest of the Plan's Participants, by appropriately monitoring the actions of the Plan's fiduciaries, and by replacing breaching fiduciaries with prudent fiduciaries, some or all of the Plan's losses caused by Defendants' breaches of fiduciary duty would have been avoided.

124. Plaintiffs further contend that the Plan suffered a loss, and Plaintiff and the other Class members were damaged, by Defendants' above-described conduct during the Class Period because of Defendants' materially inaccurate statements, acts and omissions in connection with the prudence of making and maintaining investments in Company stock. Where a breach of fiduciary duty consists of, or includes, misrepresentations and omissions material to a decision by a reasonable participant that results in harm to the participant, the participant is presumed, as a matter of law, to have relied upon such misrepresentations and omissions to his or her detriment. Here, Defendants's

-34-

above described statements, acts and omissions constituted misrepresentations and omissions that further caused Plaintiffs' losses.

## REMEDY FOR BREACHES OF FIDUCIARY DUTIES

125.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ."

126.     With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Plan would not have made or maintained its investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable investment available. In this way, the remedy restores the value of the Plan's assets to what they would have been if the Plan had been properly and prudently administered.

127.     Plaintiff and the Class are therefore entitled to relief from the Defendants in the form of:

   a.     monetary payment from the Defendants to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as required by ERISA § 409(a), 29 U.S.C. § 1109(a);

   b.     injunctive, monetary, and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA § 502(a)(2) & (3), 29 U.S.C. § 1132(a)(2) & (3);

   c.     reasonable attorney's fees and expenses as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law;

-35-

      d.      taxable costs; and,

      e.      interest on some or all of these amounts as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B.      A Declaration that the Defendants breached their ERISA fiduciary duties to the Plan's

participants and beneficiaries;

C.      An Order compelling the Defendants to make good to the Plan all injury to the Plan

resulting from these breaches of fiduciary duty, including:

      a.      restoration to the Plan for losses resulting from imprudent investment of the Plan's assets;

      b.      restoration to the Plan of all profits the Defendants made through use of the Plan's assets;

      c.      restoration to the Plan of all profits that the Plan would have made had the Defendants fulfilled their fiduciary obligations; and,

      d.      other equitable restitution and appropriate equitable monetary relief.

D.      An Order imposing a Constructive Trust on any amounts by which any Defendant

was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E.      An Order enjoining Defendants from any further violations of their ERISA fiduciary

obligations;

F.      An Order permanently removing the Defendants from any position of trust with

respect to the Plan and the appointment of independent fiduciaries to administer the Plans;

G.      An Order awarding costs and expenses, including the cost of experts, pursuant to 29

U.S.C. § 1132(g);

ADLER & ASSOCIATES, P.L.L.C.  30300 NORTHWESTERN HWY., SUITE 304, FARMINGTON HILLS, MI 48334  (248) 855-5090

H.    An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the Common

Fund Doctrine; and,

I.    An Order awarding such other and further relief as the Court deems equitable and

just.


DATED:        September 26, 2005

Respectfully submitted,

**ADLER & ASSOCIATES**

Barry Adler
30300 Northwestern Highway, Suite 304
Farmington Hills, MI 48334
Telephone: (248) 855-5090

**Local Counsel for Plaintiff**

Ralph M. Stone
**SHALOV STONE & BONNER LLP**
485 Seventh Avenue, Suite 1000
New York, NY 10018
Telephone: (212) 239-4340
Facsimile: (212) 239-4310

Ronen Sarraf
Joseph Gentile
**SARRAF GENTILE LLP**
485 Seventh Avenue, Suite 1005
New York, NY 10018
Telephone: (212) 868-3610
Facsimile: (212) 918-7967

**Counsel for Plaintiff and the Class**

-37-

**05-40298**

(Rev. 11/04)

# CIVIL COVER SHEET   County in which this action arose   WAYNE

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
TONYA FRANCIS

**MAGISTRATE JUDGE CAPEL**

## DEFENDANTS
JON S. BILSTROM, CAROL H. RODRIGUEZ, JESS RHOADS, COMERICA INCORPORATED, and JOHN DOES 1-30

**(b)** County of Residence of First Listed Plaintiff   WAYNE
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   WAYNE

NOTE:

JUDGE : Gadola, Paul V.
DECK  : S. Division Civil Deck
DATE  : 09/26/2005 @ 16:42:41
CASE NUMBER : 4:05CV40298
CIV FRANCIS V BILSTROM ET AL
(EW)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
ADLER & ASSOCIATES, Barry Adler, Esq., 30300 Northwestern Highway, Suite 304
Farmington Hills, MI 48334; Tel: (248) 855-5090

Attorneys (If

## II. BASIS OF JURISDICTION (Select One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☑ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP (For Diversity Cas

| | | |
|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1  Incorporated or Principal Place of Business In This State  ☐ 4  ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2  Incorporated and Principal Place of Business In Another State  ☐ 5  ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3  Foreign Nation  ☐ 6  ☐ 6 |

## IV. NATURE OF SUIT (Select One Box Only)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☑ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Access to Justice
- ☐ 950 Constitutionality of State Statutes

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  **Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

## V. ORIGIN (Select One Box Only)
- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C. § 1132

Brief description of cause:
Breach of fiduciary duty

## VII. REQUESTED IN COMPLAINT:
☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☑ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE — Hon. Marianne O. Battani   DOCKET NUMBER   2:02-cv-60233

DATE
September 26, 2005

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?      ☐ Yes
                                                                               ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.        Other than stated above, are there any pending or previously    ☑ Yes
             discontinued or dismissed companion cases in this or any other    ☐ No
             court, including state court? (Companion cases are matters in which
             it appears substantially similar evidence will be offered or the same
             or related parties are present and the cases arise out of the same
             transaction or occurrence.)

If yes, give the following information:

Court:   District Court for the Eastern District of Michigan

Case No.:   2:02-cv-60233

Judge:   Marianne O. Battani

Notes :